# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SERVICOM LLC, | : | Case No. 18-31722 (AMN) |
| JNET COMMUNICATIONS LLC, and | : | Case No. 18-31723 (AMN) |
| VITEL COMMUNICATIONS LLC, | : | Case No. 18-31724 (AMN) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| SERVICOM LLC, | : | |
| JNET COMMUNICATIONS LLC, and | : | |
| VITEL COMMUNICATIONS LLC | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| CORAL CAPITAL SOLUTIONS LLC, | : | |
| CT CORPORATION SYSTEM, AS | : | |
| REPRESENTATIVE, VFI KR SPE I, LLC, | : | |
| GROWTHFUNDING EQUIPMENT FINANCE, | : | |
| And EVERLASTING CAPITAL CORP., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO**
**USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND**
**(III) APPROVING SALE OF ACCOUNTS RECEIVABLE**

Upon the Motion for Interim and Final Orders (I) Authorizing The Debtors To Use Cash Collateral, (II) Granting Adequate Protection and (III) Approving Sale of Accounts Receivable (ECF No. __, the "Motion"), filed by ServiCom LLC ("ServiCom"), JNET Communications LLC ("JNET"), and Vitel Communications ("Vitel," together with ServiCom and JNET, the "Debtors"), seeking, among other things, entry of this Interim Order authorizing the Debtors to use cash collateral in accordance with the budget annexed hereto as **Exhibit A** (the "Budget"), granting adequate protection and approving the sale of the Debtors' accounts receivable; and

1

The Debtors having requested in the Motion that (a) pending the Final Hearing (as defined herein) on the Motion, a hearing be scheduled on an expedited basis (the "Interim Hearing") to consider entry of this Interim Order, (b) that a final hearing (the "Final Hearing") be scheduled on the Motion to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the Debtors' use of Cash Collateral (as defined below), and (c) notice procedures be established in respect of the Final Hearing; and

Notice of the Interim Hearing having been given to (a) the U.S. Trustee; (b) counsel to Coral Capital Solutions LLC ("Coral Capital"); (c) the Other Lien Holders (as defined below) or their counsel; and (d) the twenty largest unsecured creditors of each of the Debtors (collectively, the "Notice Parties"); and it appearing that on the record made in the Cases (as defined below) and after considering the Debtors' immediate need for use of Cash Collateral and to sell the Receivables (as defined below), no other or further notice need be given; and Coral Capital having consented to the Debtors' use of Cash Collateral and agreed to purchase Receivables in accordance with this Interim Order;

NOW, THEREFORE, upon the Motion and the record of the Interim Hearing held before the Court on October __, 2018; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

A.    <u>Filing</u>.  On October 19, 2018, (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned Chapter 11 cases (collectively, the "<u>Cases</u>").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have thereafter remained in possession of their assets and operated as Debtors in possession.  Contemporaneously with filing the Motion, the Debtors filed motions with the above-captioned Bankruptcy Court (the "<u>Court</u>") seeking certain first day relief to permit Debtors to continue in operation as going concerns.

B.    <u>Jurisdiction</u>.  The Court's consideration of the Motion and this Interim Order is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  The statutory predicates for the relief sought herein are Sections 361, 362 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001 and 6004.

C.    <u>Representations in Motion</u>.  Subject to the reservations set forth in the Motion, the Motion makes the following representations:

a.    <u>Factoring Agreement</u>.  Coral Capital and the Debtors are parties to that certain "Factoring Agreement" dated as of October 17, 2011 (the "<u>Factoring Agreement</u>") and appended hereto as **Exhibit C**.  In summary, the Factoring Agreement provides as follows:

(i)    Each of the Debtors agreed to sell and assign to Coral Capital, and Coral Capital agreed to purchase from each of the Debtors, certain accounts arising from such Debtor's sale of goods or rendition of services to such Debtor's customers located in the United States and Canada (collectively, the "<u>Receivables</u>"), subject to all terms and conditions contained in the Factoring Agreement.

(ii)    From time to time, the Debtors may submit to Coral Capital a written request that it purchase the Receivable listed therein, and in response thereto, Coral Capital may provide the Debtors a schedule of Receivables that it elects to purchase.

(iii)    The "Purchase Price" for such "Approved Receivables" shall be the "Net Amount" (all as defined therein), payable in two installments.  The first, the "Advance," is paid on the business day immediately following the approval date in an amount equal, generally to up to 85% of the "Net Amount" of such approved Receivables.  The second payment is paid by Coral Capital to the Debtors three business days after the day on which payment of the approved Receivables is

received by Coral Capital and equals any excess payment received by Coral Capital after reimbursement for its "Advance" and certain other authorized deductions.

(iv) In order to secure the payment and performance of the "Obligations" (as defined in the Factoring Agreement), Section 6.1 of the Factoring Agreement contains a grant by Debtors to Coral Capital of a continuing security interest in and right of setoff with respect to, and assigned to Coral Capital, all right, title and interest in and to essentially all of such Debtor's now existing and future personal property, including the following: accounts (including the Receivables), chattel paper (including electronic chattel paper), general intangibles (including all payment intangibles and all other rights to payment), instruments, inventory, equipment, documents and investment property, including, without limitation, any claims for tax refunds from any governmental authority due or to become due, all proceeds of letters of credit, all tort claims, all insurance proceeds, all trademarks and tradenames, all books and records, all deposit accounts, all computer programs, software, licenses and permits, whether now or hereafter existing or now owned or hereafter acquired and wherever located and all proceeds of the foregoing (collectively, the "Prepetition Collateral").

(v) The term "Obligations" is defined to include all loans, advances, indebtednes, liabilities, obligations, debit balances, covenants and duties owing by a Debtor or any of the Debtor's subsidiaries or affiliates (whether arising thereunder or any "Other Agreement" (as defined therein)) to Coral Capital or Coral Capital's parent, subsidiary or affiliate of every kind and description (whether now or hereafter existing and whether arising under the Factoring

4

>Agreement, under any Other Agreement or otherwise), direct or indirect, absolute or contingent, due or to become due, including, without limitation, any indebtedness, liabilities or obligations owing by a Debtor to others which Coral Capital has acquired by assignment, participation or otherwise, and further including, without limitation, all interest, fees, charges, expenses, indemnification obligations and attorneys' fees for which a Debtor or any other person may be obligated under the Factoring Agreement or any Other Agreement.

Coral Capital purported to perfect its security interest in the Prepetition Collateral by recording UCC-1 financing statements with the offices of the Delaware Secretary of State (collectively, and as amended and/or continued from time to time the "Financing Statements"). The Financing Statements appear to confer upon Coral Capital a first-priority security interest in the Prepetition Collateral. The Prepetition Collateral, therefore, may include all of the Debtors' "cash collateral" as that term is defined by Bankruptcy Code § 363(a) (the "Cash Collateral").

b.      Secured Term Note. Separate and distinct from the Factoring Agreement, Debtors made, executed and delivered to Coral Capital that certain "Secured Term Note" dated November 21, 2017, in the original principal amount of $750,000; as such Secured Term Note amended and modified by that certain Amendment No. 1 to Secured Term Note, increasing the principal balance of the loan to $1,000,000; and as such Secured Term Note was further amended and modified by that certain Amendment No. 2 to Secured Term Note (collectively, the "Secured Term Note"). The Secured Term Note evidences a term loan by Coral Capital to the Debtors in the original principal amount of $750,000 (the "Secured Term Loan"). In order to secure the payment and performance of the Secured Term Note, Section 5.2 of the Secured Term Note provides that the

5

Obligations thereunder shall be secured by the "Collateral" (defined herein as the "Prepetition Collateral") pledges pursuant to the Factoring Agreement (all Coral Capital pre-petition liens and security interests, the "Prepetition Liens").

  c. <u>Prepetition Coral Capital Loan Obligations</u>. As of the Petition Date, the Debtors were indebted and liable to Coral Capital: (a) under the Factoring Agreement, the outstanding balance due as of the Petition Date is approximately $9,600,000; (b) under the Secured Term Note, the principal amount of $1,400,000, plus accrued and unpaid interest thereon; and (c) all other fees, costs and additional charges due under the Factoring Agreement and the Secured Term Note, as the case may be (clauses (a), (b) and (c) herein are hereinafter referred to collectively as the "<u>Prepetition Coral Capital Loan Obligations</u>").

  D. <u>Necessity for and Limitations on Use of Cash Collateral.</u> The Debtors have an immediate need to obtain authorization to use cash collateral and to sell Receivables. The availability to the Debtors of sufficient working capital, liquidity and other financial accommodations is vital to their ability to continue their operations so that they may pursue and effectuate a plan of reorganization. The Debtors require use of their cash (which is generated primarily from operations), including all Cash Collateral, and the ability to sell Receivables to carry on the operation of their businesses and to administer and preserve the value of their assets, including the Prepetition Collateral. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral and the sale of the Receivables.

  E. The preservation and maintenance of the Debtors' businesses and their assets is necessary to maximize returns for all creditors and effectuate a plan of reorganization with respect to their remaining assets. Absent the Debtors' ability to use Cash Collateral and to sell Receivables

in accordance with the terms hereof, the continued operation of their businesses would not be possible, and serious and irreparable harm to the Debtors, and their estates and creditors would occur.

  F.  The Debtors' use of the Cash Collateral and sale of Receivables under the terms set forth herein is in the best interests of the Debtors, their creditors and their estates, and proposed pursuant to the Debtors' sound business judgment.

  G.  Coral Capital is entitled, pursuant to sections 361, 362 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in value of the Prepetition Collateral, resulting from the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) and the imposition of the automatic stay.

  H.  <u>Notice</u>. The Motion, the proposed Interim Order and the order scheduling the Interim Hearing was served by the Debtors on the Notice Parties. The notice provided of the Motion and the Interim Hearing is sufficient and adequate notice and no further notice of the relief sought at the Interim Hearing is necessary or required.

  I.  <u>Record</u>. The record adequately demonstrates the need for the Court to have conducted the Interim Hearing on the notice provided because of the potential for immediate and irreparable harm to the Debtors, their assets, businesses and estates. Based on the record, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, notice of the Interim Hearing was adequate as set forth herein and on the record.

  Based upon the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.	<u>Motion Granted</u>.  The Motion is granted as to the Debtors' request for interim relief with respect to the use of cash collateral and the sale of Receivables to the extent provided herein. Any objections to the interim relief sought in the Motion with respect to the entry of this Interim Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled

2.	<u>Authorization</u>.  Subject to the terms and conditions of this Interim Order, the Debtors may use their cash, including any Cash Collateral, in accordance with the Budget appended hereto as **Exhibit A**, and may sell their Receivables and Coral Capital may purchase the Debtors' Receivables in accordance with the Factoring Agreement appended hereto as **Exhibit B**, commencing from the Petition Date through and including (but not beyond) November __, 2018.

3.	<u>Adequate Protection</u>. Pursuant and subject to sections 361, 362, 363, 503 and 507 of the Bankruptcy Code, as adequate protection for any diminution in value of the Prepetition Collateral resulting from the use of Cash Collateral, the Carve-Out (as defined below), the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and further in exchange for the Debtors' continuing sale and Coral Capital's continuing purchase of Receivables on the terms and conditions set forth in the Factoring Agreement:

a.	To Coral Capital—

(1)	To secure the Debtor's "Obligations" under the Factoring Agreement and to the extent of any diminution in value of the Prepetition Collateral resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, Coral Capital is hereby granted valid, binding, enforceable and perfected senior replacement liens on and security interests in (the "<u>Adequate Protection Liens</u>") all property and assets of any kind and nature in which any of the Debtors have an interest, whether real or personal, tangible

or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar state law ("Avoidance Actions"), or any proceeds thereof.  The Adequate Protection Liens shall have the following priorities:

(A)     First Priority on Unencumbered Property.  Subject to the Carve Out (as defined below), a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition Collateral of the type and kind that constitutes Coral Capital's Prepetition Collateral, in addition to all Postpetition Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date.

(B)     Liens Junior to Certain Existing Liens.  Subject to the Carve-Out, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, that is subject to (x) valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or (y) valid and unavoidable senior liens in existence immediately prior to the Petition

Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which prepetition security interests and liens in favor of Coral Capital is junior to such valid, perfected and unavoidable liens.

(C)     Liens Senior to Certain Other Liens.  The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and its estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made pari passu with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(3)     Superpriority Claims.  To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, Coral Capital is hereby granted allowed superpriority claims senior to all other administrative expense claims and to all other claims, including administrative claims, arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding section (the "Superpriority Claims"), which Superpriority Claims is to be payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof;

10

provided, however, that such Superpriority Claims are subject to the Carve-Out (as defined below).

(4)     The Adequate Protection Liens and Superpriority Claims shall be, in each case, (i) senior and prior, and prime, the Prepetition Liens and the Prepetition Coral Capital Loan Obligations, but junior and subject only to (x) the Carve-Out and (y) all other valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date, or duly perfected thereafter, under section 546(b) of the Bankruptcy Code, which under applicable law would take priority over the Prepetition Liens, and (ii) effective as of the date of the entry of this Interim Order without any further action by the Debtors Coral Capital and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

(5)     Carve Out.  Notwithstanding any provision of the Factoring Agreement, the Secured Term Note, this Interim Order, or any other agreement, the Prepetition Liens, Adequate Protection Liens and Superpriority Claim (each as defined herein) shall be subject and subordinate in all respects to a carve-out for the following costs, fees and expenses (collectively, the "Carve-Out"): (i) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (ii) the unpaid fees, costs and expenses incurred by professionals retained by the Debtors up to a maximum of $150,000, or retained by any official committee pursuant to Bankruptcy Code § 327 or 1103 up to a maximum of $25,000, and only to the extent the fees, costs, and expenses of such professionals are allowed by the Court, provided, however, that neither Coral Capital's Cash Collateral nor the Carve-Out may be used, either

11

directly or indirectly, for any services or expenses arising from or relating to the investigation, initiation or prosecution of any action: (i) contesting the validity, priority or extent of the prepetition or postpetition claims or liens asserted by Coral Capital, (ii) asserting claims or causes of action of any sort whatsoever (including, without limitation, avoidance claims) against Coral Capital or any person or entity affiliated with Coral Capital, (iii) preventing, hindering or delaying Coral Capital from enforcing any of its rights or remedies or realizing upon the Collateral; or (iv) seeking to modify any of the rights of Coral Capital provided for in this Interim Order.

b. <u>To the Other Lien Holders</u>. CT Corporation, as representative, VFI KR SPE I, LLC, Growthfunding Equipment Finance, and Everlasting Capital Corp. (together, the "Other Lien Holders") may assert interests in some portion of the Cash Collateral. To the extent that any of the Other Lien Holders hold an interest in the Cash Collateral, as adequate protection for the Debtors' use of Cash Collateral pursuant to this Interim Order, each such Other Lien Holder is hereby be granted (a) a replacement lien on all of the Prepetition Collateral and the Postpetition Collateral and (b) a Superpriority Claim; provided, however, that such replacement liens and Superpriority Claims are to be only for the amount of any diminution in value (if any) of such Other Lien Holder's interest (if any) in the Cash Collateral and that such replacement liens or Superpriority Claim are to be only to the same validity, priority and extent of any pre-petition interest in the Cash Collateral held by such Other Lien Holder. The Other Lien Holders shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the replacement liens granted herein.

4.	Pursuant to Bankruptcy Code § 363(f), the Debtors' sale of Receivables to Coral Capital in accordance with the Factoring Agreement shall be free and clear of all claims, liens and interests in such Receivables.

5.	<u>Limitation on Use of Cash Collateral</u>.  No proceeds of the Carve-Out, the Prepetition Collateral, the Postpetition Collateral or the Cash Collateral shall be used by Debtors for the purpose of: (a) investigating, objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Coral Capital Loan Obligations or the Prepetition Liens (but not including any investigation related thereto which shall be subject to the limitations set forth below), or any other rights or interests of Coral Capital, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against Coral Capital or Coral Capital, including, without limitation, for Coral Capital liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) seeking to modify any of the rights granted to Coral Capital hereunder; or (c) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and are permitted pursuant to the Budget.

6.	<u>Limitation on Additional Liens</u>. The Debtors shall not be permitted to grant any new liens (including, without limitation, liens with a priority to or pari passu with the Prepetition Liens, the Adequate Protection Liens, or any other liens granted to Coral Capital under this Interim Order) or to provide any party with an administrative expense claim having a priority over or being pari passu with the Superpriority Claims, except as otherwise provided in this Interim Order.

7.	<u>Stay, Vacation, Reversal, etc</u>.  Any stay, vacation, reversal or modification of this Interim Order or any provision hereof shall not affect the Adequate Protection Liens or the Superpriority Claims, or the validity of any obligations to, or rights of, Coral Capital or Coral Capital incurred or granted pursuant to this Interim Order with respect to the use of Cash Collateral and any other Prepetition Collateral prior to such stay, vacation, reversal or modification.

13

Notwithstanding any such stay, vacation, reversal or modification, all uses of Cash Collateral and obligations incurred and rights granted pursuant hereto prior to the effective date of such stay, vacation, reversal or modification shall be governed in all respects by the original provisions hereof and Coral Capital shall be entitled to all the rights, privileges, benefits and remedies, including, without limitation, the security interests and priorities, granted herein with respect to such obligations and use of Cash Collateral.  No waiver, modification, or amendment of any of the provisions of tis Interim Order shall be effective as between the parties unless it is set forth in writing, signed by the Debtors and Coral Capital, and approved by the Court.

8. Upon the occurrence of an Event of Default and five (5) business Days written notice to Debtors and Debtors' counsel thereof, the Debtors' consensual rights to use Cash Collateral pursuant to the Budget shall terminate <u>provided</u>, <u>however</u>, any rights of the Debtors to seek the non-consensual use of Cash Collateral will be reserved.  Termination of the use of the Prepetition Collateral, including Cash Collateral, pursuant to the Budget, as authorized in this paragraph 8, shall not impair the continuing effectiveness and enforceability of any other provisions in this Interim Order.

9. <u>Perfection of Security Interests</u>. Coral Capital is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether Coral Capital shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of the Interim Order.  A certified copy of the Interim Order and/or Final Order may, in the discretion of Coral Capital, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages,

14

notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order and/or Final Order for filing and recording.

10. <u>Limitation on Charging Expenses Against Collateral</u>. Subject to and effective upon entry of a Final Order, no expenses of administration (whether incurred during the Chapter 11 Case or any subsequent case) incurred for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral incurred while the Debtors are authorized to use such collateral under the Final Order shall be charged against or recovered from the Prepetition Collateral or the Postpetition Collateral pursuant to Bankruptcy Code section 506(c) or any similar principal of law or equity without the express prior written consent of Coral Capital.

11. <u>No Release of Non-Debtors</u>. Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-Debtor third party liable to Coral Capital with respect to any Prepetition Coral Capital Loan Obligations or otherwise.

12. <u>No Third-Party Beneficiaries</u>. No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except with respect to the Carve-Out and as otherwise specifically provided herein.

13. <u>Retention of Jurisdiction</u>. The Court shall retain exclusive jurisdiction over the subject matter of this Interim Order in order to resolve any dispute in connection with the rights and duties specified hereunder.

14. <u>Headings</u>. Headings have been inserted in this Interim Order as a matter of convenience for reference only and it is agreed that such headings are not a part of this Interim Order and shall not be used in interpreting any provision of this Interim Order.

15. <u>Further Assurances</u>. The Debtors and Coral Capital shall execute all further documents and perform such further acts as may reasonably be required to effectuate the purpose and intent of this Interim Order.

23. <u>Notice of Final Hearing; Objections</u>. The Debtors shall, on or before October __, 2018, transmit copies of a notice of the entry of this Interim Order, together with a copy of the proposed Final Order, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for the Committee, if and once appointed. The notice of entry of this Interim Order shall state the date of the Final Hearing, and that any party in interest objecting to the entry of the Final Order shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Connecticut no later than 4:00 p.m. (prevailing Eastern Time) on November __, 2018, and shall serve such objections so that the same are received on or before such date by: (a) Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport , CT 06604 Attn: James Berman, Esq., Stephen M. Kindseth, Esq., and Eric Henzy, Esq., counsel for the Debtors; and (b) the Office of the United States Trustee for Region 2, 150 Court Street, New Haven, CT 06510.

24. <u>Final Hearing</u>. The Final Hearing will be held on November __, 2018 at __:__ _.m. (prevailing Eastern Time).

Dated: October __, 2018

BY THE COURT

16